```
                    UNITED STATES DISTRICT COURT
                    EASTERN DISTRICT OF NEW YORK


  JEFFREY McEARCHEN,              *    Case No. 13-CV-03569(FB)
                                  *
              Plaintiff,          *    Brooklyn, New York
                                  *    May 7, 2014
      v.                          *
                                  *
  URBAN OUTFITTERS, INC.,         *
                                  *
              Defendant.          *
                                  *
  * * * * * * * * * * * * * * * * *

          TRANSCRIPT OF CIVIL CAUSE FOR TELEPHONE CONFERENCE
               BEFORE THE HONORABLE JAMES ORENSTEIN
                  UNITED STATES MAGISTRATE JUDGE

  APPEARANCES:

  For the Plaintiffs:            SETH R. LESSER, ESQ.
                                 Klaffer Olsen & Lesser, LLP
                                 Two International Drive
                                 Suite 350
                                 Rye Brook, NY  10573

                                 CHARLES GERSHBAUM, ESQ.
                                 Hepworth, Gershbaum & Roth,
                                  PLLC
                                 192 Lexington Avenue
                                 Suite 802
                                 New York, NY  10016

                                 SUSAN H. STERN, ESQ.
                                 Shavitz Law Group, P.A.
                                 1515 S. Federal Highway
                                 Suite 404
                                 Boca Raton, FL  33432


  Proceedings recorded by electronic sound recording, transcript
  produced by transcription service.
```

**Fiore Reporting and Transcription Service, Inc.**
**4 Research Drive, Suite 402**
**Shelton, Connecticut 06484 (203)929-9992**

APPEARANCES: (Cont'd.)

For the Defendants:		THOMAS BARTON, ESQ.
				WILLIAM R. HORWITZ, ESQ.
				Drinker Biddle & Reath LLP
				One Logan Square
				Suite 200
				Philadelphia, PA  19103

1           (Proceedings commenced at 10:07 a.m.)

2                   THE COURT: Good morning, everybody.  It's Judge

3       Orenstein.  Sorry to keep you waiting.

4                   We're on the record in McEarchen against Urban

5       Outfitters, 13-CV-3569.

6                   Counsel, would you state your appearances, please.

7       Let's start with the plaintiffs.

8                   MR. LESSER: Good morning, Your Honor.  This is Seth

9       Lesser of Klafter Olsen & Lesser, and from other locations, I

10      have several of my co-counsel.  Why don't you jump in?  Susan?

11                  MS. STERN: Sure.  Susan Stern from the Shavitz Law

12      Group.

13                  THE COURT: Good morning.

14                  MR. LESSER: Charlie?

15                  MR. GERSHBAUM: Charles Gershbaum from Hepworth,

16      Gershbaum and Roth.

17                  THE COURT: I'm sorry .  I didn't -- oh, Mr.

18      Gershbaum. Okay.  Yes.

19                  MR. GERSHBAUM: Yes.  Good morning, Judge.

20                  THE COURT: All right. So the three of you for the

21      plaintiffs.  Anyone else for the plaintiffs?

22         (No response.)

23                  THE COURT: Okay.  For the defendants?

24                  MR. BARTON: Good morning, Your Honor.  This is Tom

25      Barton, from Drinker Biddle and Reath, and with me is Bill

4

1  Horwitz, also from Drinker Biddle and Reath, on behalf of
2  Urban Outfitters.
3      THE COURT: Okay. Good morning.
4      All right, everybody.
5      So I have -- there are two open issues. There's the
6  question of the depositions and then there's the notice to
7  potential opt-in plaintiffs on which you submitted some
8  supplemental letters yesterday. So I'd like to address both
9  of them today.
10     I'm happy to go in either order, if anyone has a
11 preference. If not, let's start with the depositions.
12     And Mr. Barton, maybe I could start with you on this
13 one. If I've missed this, forgive me, but I don't think in
14 your response to the motion you addressed the possibility of
15 conducting depositions by video conference.
16     MR. BARTON: We didn't, Your Honor. Our preference
17 would be to do them in person, but we certainly would consider
18 and talk to the plaintiff's counsel about doing them by video.
19     THE COURT: Yes, why don't you just do that. I
20 mean, look. We want to lessen the burdens as much as
21 possible, and I don't want anybody to have to travel
22 unnecessarily, but particularly in a case like this where the
23 people we're talking about, the deponents we're talking about,
24 are not people who chose this forum.
25     They decided to allow their claims to be litigated

1   in a forum where similar claims were already being litigated.
2              You know, I think the solitary goal of the statute
3   is promoted if we make sure that those people get a chance to
4   participate in a litigation without having to assume burdens
5   that they may not be able to afford.
6              So if we could do that by virtue of a video
7   conference, I think that solves everybody's problem.  But if
8   anybody has a problem with that, let me know.
9              MR. BARTON:  Your Honor, the only thing that I would
10  then need to consider is whether I travel to them.  Because I
11  would like to be face-to-face, if possible.  I understand what
12  you're saying about reducing the burden on the plaintiff.
13             THE COURT:  But it's also on you.  And that's why
14  I'm suggesting video conference.
15             Look, if you're willing to travel out to them, I
16  think that's great.  I was a litigator myself and I certainly
17  understand the value of the face-to-face confrontation.
18             And if you're willing to go out there, I would
19  encourage it.  But I don't want to force that on you if you
20  want to reduce costs as well.  And that's why I'm suggesting
21  video conference.
22             MR. BARTON:  Understood.
23             THE COURT:  But in any event, I'm not going to
24  require the out-of-state opt-in plaintiffs to come to New
25  York. All right?

1                    MR. BARTON:  Understood.
2                    THE COURT:  So I guess to some extent that's -- that
3           goes in favor of what the plaintiffs are seeking, but really
4           what I'm asking you to do is to work this out.
5                    I'm going to deem the motion, if not withdrawn, at
6           least premature because I don't know that you've had a chance
7           yet to fully work this out among yourselves.
8                    But that's my view is that the opt-ins from out of
9           state don't travel. Mr. Barton, you're certainly free to go to
10          them, but I'm also happy to have it done by video to save
11          costs for you.
12                   Anything else that anyone wants to say on -- oh, I'm
13          sorry.  That leaves open on the first -- on this motion the
14          question of duration.
15                   I generally hesitate to put a durational limit on
16          depositions in advance. I like the idea -- and forgive me. I
17          forgot who floated it first of doing one or two, seeing how it
18          goes and then we'll all be better informed about how these
19          things should proceed.
20                   But -- and again, Mr. Barton, let me turn to you.
21          Do you anticipate having more than a couple of hours -- a
22          couple three hours of questions to ask opt-in plaintiffs?
23                   MR. BARTON:  Well, first of all, Your Honor, I will
24          not waste anybody's time. I'm not interested in doing that.
25          And I will do the depositions as efficiently as possible.

7

1  I believe that after we take one or two we'll know
2  exactly where we're going and we'll be able to do the
3  depositions in well less than seven hours.
4  But from the outset I don't want to sort of tie
5  myself, tie my hands before I know how these are going to go.
6  Sometimes plaintiffs are not necessarily responsive to the
7  questions. Sometimes we go into different areas.
8  So I just want the opportunity to take a few and if
9  plaintiff's counsel thinks I'm overdoing it, or wasting
10  people's times, which I don't think they will, then I think we
11  can talk about that after we do a couple.
12  THE COURT: Yes. Look. And even during the first
13  one if anybody thinks that the other side is being dilatory,
14  you give me a call.
15  But I really do hesitate to try to put limits on it
16  in advance. I won't hesitate to do it post hoc with respect to
17  future depositions, if I'm persuaded that one side or the
18  other is being dilatory.
19  But let me ask the plaintiff's counsel, one of the
20  issues you raise on your side is that these are people who
21  face the prospect of spending a long time in a deposition.
22  They're losing money.
23  Given that it's their employer on the other side of
24  the table, would that problem disappear if the time that they
25  spend at the deposition is considered work time and they're

1   getting paid for it?
2               MR. LESSER:  Your Honor, this is Mr. Lesser.  That
3   is usually not a problem with the individuals who are current
4   employees.
5               THE COURT:  Right.
6               MR. LESSER:  The difficulty in these cases, the real
7   difficulty in these cases is for the former employees.
8               THE COURT:  I get that.
9               MR. LESSER:  Usually are more likely to join the
10  cases because people, particularly at this level of companies
11  and retail chains like this, are very, very, very wary about
12  bringing an FLSA case.
13              Remember from both these people -- not that -- it's
14  not -- it's a not a life changing lawsuit.
15              THE COURT:  Okay.  So look.  I get what you're
16  saying.
17              Try and work it out among yourselves and be
18  sensitive to the ideas, specifically with respect to former
19  employees who won't be paid for this time, to make it as
20  efficient as possible.
21              If there's a particular individual here and there
22  who you think it's a real hardship because they're going to
23  lose their job if they're out for more than three hours, or
24  there's some real hardship like that in an individual case,
25  obviously, you'll let me know and if you can't work it out on

9

1   your own, you come to me for a ruling.  Okay?  But I'm not --
2           MR. LESSER:  That's fine. We will certainly --
3   we'll certainly do so.
4           This issue, to be quite blunt and honest, is an
5   issue that actually comes to the floor much more significantly
6   if we actually reach the second stage of the case, and then
7   there's a large number of opt-in's.  That's when the pile of
8   depositions becomes mind numbingly repetitive, as I often find
9   in these cases.
10          THE COURT:  Yes.
11          MR. LESSER:  But yes, we have had a very cordial
12  working relationship with our friends on the other side and I
13  have no doubt we'll continue.
14          THE COURT:  Okay.  Good.  All right.
15          Let's move onto the notice issue.
16          I've read your submissions, including the ones filed
17  yesterday, though I will say I'm not sure I understand the
18  pertinence of this *Ramirez* case.  It's explicitly not
19  addressing the issue here.  The court is quite clear that it
20  need not reach the question about whether potential class
21  members are similarly situated because it's addressing an
22  issue that isn't part of the analysis in this circuit.
23          So I don't see any reason to follow what's in the
24  Florida case, simply because it's not addressing an issue in
25  this case.

10

1         On the larger issue, Mr. Barton, perhaps I could ask
2    you to clarify.  You seem to be saying that it's not enough to
3    go on just what's in the complaint and it's not enough to go
4    on the fact that you have -- that you believe everybody's
5    exempt.
6         But as I think I made clear at the initial
7    conference, that's not at all my concern and it's basically
8    that there doesn't seem to be any fact pertinent to the
9    question of whether there is a violation of the wage laws that
10   renders members of the punitive collective different from one
11   another.
12        And at that conference we went through facts that
13   you agree they share in common.
14        So I don't see why do I need affidavits or some
15   other evidence to supplement the evidence, the affirmative
16   evidence provided by the admissions of the defendant by way of
17   what you said at the initial conference?
18        MR. BARTON:  Well, Judge, thanks for the
19   opportunity to talk to about this issue again.  You know, I
20   remember our discussion at that initial conference.  I'll try
21   to be brief.
22        THE COURT:  Yes, but let me just make sure we're on
23   the same page.  You agree that what you said there is
24   evidence, right?
25        MR. BARTON:  Well, I agree my representations to

11

1  the court are binding on me and they're evidence.
2          THE COURT:  Right.  Okay.  So it's not --
3          MR. BARTON:  I think I --
4          THE COURT:  Wait, wait, wait.  So we're clear, that
5  any decision I make is not, can't be based solely on
6  allegations in the complaint because the evidentiary record is
7  undisputedly broader than that, correct?
8          MR. BARTON:  Well, I don't know, Your Honor.  Maybe
9  I'm not being clear as to what I'm saying to you.
10         And so if I could just take another shot at it --
11         THE COURT:  You could, but you have already said
12 something that is part of the evidentiary record and I'm
13 trying to make sure that I'm not missing something about that.
14         You don't disagree, do you, that what you said at
15 the initial conference is part of the evidence on which I can
16 rely.
17         MR. BARTON:  I agree with Your Honor.
18         THE COURT:  Okay.  Good.  So go ahead.  If you want
19 to supplement it, if you want to add more evidence to the
20 record, go ahead.
21         MR. BARTON:  I will, Your Honor.
22         We do not believe that these employees are similarly
23 situated and for the reasons I think I talked about last time
24 we believe, number one, you're talking about a group of
25 department managers who hold very, very different jobs.

12

1               You have women's accessory managers, men's
2     department managers, houseware department managers. They do
3     very different things.
4               And even within the individual locations, they have
5     very, very different scope of job duties.  Some of them are
6     managing the entire store for long, long periods of time.
7     They have different responsibilities for the cash registers in
8     terms of depositing funds, for instructing employees about
9     shift changes and assignments.
10              These employees in the very, very different
11    departments and very, very different locations at Urban
12    Outfitters have very, very different job duties.
13              And there are cases in the Second Circuit that talk
14    about the variations within a particular person's job duties
15    as is not being similar situations.
16              In addition, Your Honor, we intend --
17              THE COURT:  May I ask -- I'm sorry to interrupt, but
18    I have a question about what you just said.
19              MR. BARTON:   Sure.
20              THE COURT:  This is a question I tried to ask
21    multiple times last time. I think I understood your answer,
22    but now you're -- I think you're trying to maybe give a
23    different answer.
24              Of the dissimilarities that you're talking about in
25    general --

13

1 MR. BARTON: Right.

2 THE COURT: -- without having it in this instance
3 given any specific examples, would any of them have the
4 potential to render one member of the punitive collective
5 covered by the FLSA and the other not? And if so, give an
6 example.

7 MR. BARTON: I don't know and I don't quite
8 understand your question, Your Honor. I apologize.

9 THE COURT: All right. You're saying we treat them
10 all the same but they're actually different. And the question
11 is not whether they're different -- whether -- you know, some
12 of them work in different stores. Some of them have different
13 hours. I get that.

14 The question is are they different with respect to
15 the claim at issue.

16 So I'm asking you, is there any difference that you
17 can cite among these workers, these department managers, that
18 would result in the court being able to say well, this one is
19 covered, but that one is not?

20 MR. BARTON: I don't think so. I mean, our position
21 is that they're all exempt. And to that extent, Your Honor,
22 you're correct. There is a single legal issue as to whether
23 they're exempt or not, but that's true of every alleged
24 misclassification case.

25 Every misclassification case starts with the premise

14

1    that the employer has treated them as exempt and the
2    plaintiffs are arguing they're not exempt.
3             Within those misclassification cases the question
4    becomes as to whether they're similarly situated to each
5    other, as to whether their job duties vary among the stores
6    and among individuals and among the different departments and
7    whether the damage calculations are going to be individualized
8    such that they're not similarly situated and they shouldn't be
9    treated for class purposes.
10            And the burden is on the plaintiff to prove that
11   with evidence, not just with allegations, and our point is we
12   haven't gotten there.
13            THE COURT:  Once again, Mr. Baron, you're saying
14   without evidence and allegations.  We have evidence.  You
15   have provided it, have you not?
16            MR. BARTON:   I don't think so, Your Honor. I think
17   what I'm  providing --
18            THE COURT:  Have provided some evidence.  You don't
19   agree with the significance of it.  I understand that.  And
20   I'm not asking you to concede it.
21            But I must make sure that you're not back tracking
22   on something that I thought we had clarified, which is the
23   record before me in making this decision is simply not limited
24   to the allegations in the complaint.
25            There is, in fact, affirmative evidence in there.

15

1    You may not think it supports the finding necessary for
2    dissemination of a collective action notice, but there is
3    evidence, correct?
4              MR. BARTON:  I don't think there's evidence
5    supporting it.  What I've just said I believe is a
6    representation to Your Honor that these individuals are not
7    similarly situated.  And I think that's where our minds are
8    not meeting.
9              THE COURT:  Okay.  Who wants to speak for the
10   plaintiff on this?
11             MR. LESSER: I can do so, Your Honor.  This is Mr.
12   Lesser.
13             Essentially, two points.  What I think Mr. Barton
14   really wars with the governing standards in this circuit, at
15   least in actually most circuits, but not all, which is the
16   *Hertz* standard of what needs to be shown.
17             And what was put on the record on the 31st of
18   January, and we cited it at page 5 of our brief, and it went
19   farther poking into some of the things -- touching upon some
20   of the things you just -- that have just been fought through.
21   That is evidence and those are admissions and that's what's
22   looked at.
23             All these other arguments that, in fact, they do
24   different things day by day and the like the second stage
25   merits inquiry.  We cited a decision by Judge Bianco, I

1    believe.
2             The new argument today, to turn to it, of there have
3    slightly different subgrades within this exempt classification
4    is actually addressed head on by -- it wasn't addressed
5    previously, but is addressed head on, if you wish to look at
6    it, Your Honor, in a case we cite on page 2 of our letter to
7    you from February 7th.
8             And that's about two thirds of the way down there's
9    a cite to a case called *Cunningham v EDS*, Electronic Data
10   Systems Corp.
11            And that was a case that we had -- that I had before
12   Judge Howell in which we actually had 18 different job
13   classifications at issue.
14            And we didn't actually even have plaintiffs for all
15   of those classifications.  They were actually -- they fell
16   into three families.
17            And what Judge Howell pointed out, and in fact he
18   says in that decision, although subdivision -- that's
19   essentially what Mr. Barton's arguing.  That there are these -
20   - within this one classification there are really these
21   subdivisions.
22            Judge Howell wrote "Although subdivision is simply
23   done at the second stage of litigation."  So in other words,
24   if it makes a difference within this one category of
25   department managers that they have these subdivisions, that's

1   the merit second stage and that's where it's normally heard.
2               There he actually created three over broad -- three
3   classes, because there's actually three families.  There's
4   only one family equivalent here.
5               And at least in this circuit, there's *Cunningham*,
6   that's the same issue that actually rose in one or two of the
7   other cases we cited to Your Honor, including the *HMS Host*
8   case, where there were, in fact, one class and, in fact, we're
9   now going -- three different groups of the HMS Host assistant
10  manager's.  We actually went all the say through the
11  litigation.  Those three differences didn't make a difference.
12              We now have motions -- competing motions for final
13  certification, de-certification sitting down the -- I guess
14  upstairs from you.
15              And so I respectfully submit all these issues go
16  around and all these arguments go around to the second stage,
17  the admissions, the statements on the record, we submit, for
18  the reason we put in our letter and I'm resubmitting and
19  arguing it now, is sufficient and we shouldn't need to spend
20  any more time gilding the lily, as it were, with anything
21  more.
22              THE COURT:  All right.  Well, look. I think the
23  record is clear in the way the case -- the applicable case law
24  applies to it is clear.
25              The allegations in the complaint are supplemented by

18

1    evidence in the form of an admission by the defendant that the
2    district -- the department managers, as you hear -- and I'm
3    quoting now from Mr. Barton the last time.
4           "They're responsible for opening the store.  They're
5    responsible for all the employees in the store.  They spend
6    large periods of time serving the role a manager on duty,
7    which means they are the top supervisor in the store.  There
8    is no store manager there. There is no assistant store manager
9    there.  So they're not just responsible for their own
10   individual department.
11          They have significant responsibilities around
12   increasing sales and directing the employees, training the
13   employees, disciplining the employees, conducting performance
14   reviews, hiring and there's a whole range of duties that they
15   perform."
16          And just skipping onto the next page.  That was page
17   11.  This is page 12 of the transcript from January 31st.
18          "They vary from department manager to department manager,
19   store to store, but all of them do have a very high level of
20   responsibility within the store."
21          And then I asked, "Is there any fact that
22   discovery would produce that would satisfy you that there's
23   somewhere covered by the FLSA, even though others who share
24   all of the characteristics, I guess I should phrase it this
25   way, is it your position that you might learn facts in

1        discovery that would say notwithstanding all of the attributes
2        you just told me about there are some department managers who
3        are nevertheless covered by the FLSA."
4                And Mr. Barton's answer was "I'd be very, very
5        surprised based on my having done the initial investigation
6        and having worked with this client for years."
7                There's more in the transcript along the same vein,
8        but the burden of it is this.  The defendant acknowledges that
9        these district -- department managers are similarly situated
10       with respect to the duties that render them exempt or non-
11       exempt.
12               Therefore, the record suffices -- without the need
13       for further factual development, the record suffices to
14       demonstrate that the punitive class is similarly situated and
15       that a notice should issue.
16               I'll ask you folks to get together and give me a
17       proposed notice within two weeks.
18               Anything else for today, folks?
19               MR. BARTON:  No, Judge.  Thank you.  This is Tom
20       Barton.
21               THE COURT:  Mr. Lesser?
22               MR. LESSER: Nothing else.
23               THE COURT:  Thank you, all.
24               MR. LESSER: I'm sorry.  Nothing else for plaintiff.
25               THE COURT:  Do we have a date for our next

20

1 conference?  I don't know if we do.

2 MR. BARTON:  Correct me if I'm wrong, I believe
3 not.

4 MR. LESSER: I don't think we do.

5 THE COURT:  Okay.  Then when you send me your
6 proposed notice, would you please also send me a proposed
7 schedule for completing the remaining discovery and I'll set
8 further conference dates as appropriate once I've seen that.
9 All right?

10 MR. BARTON:  All right.

11 MR. LESSER: Very good.

12 THE COURT:  Okay.  Thank you, all.  Have a very good
13 days.

14 MR. BARTON:  Thanks, Judge.

15 MR. LESSER: Thank you, Your Honor.

16 (Proceedings concluded at 12:02 p.m.)

17   I, CHRISTINE FIORE, Certified Electronic Court Reporter
18 and Transcriber and court-approved transcriber, certify that
19 the foregoing is a correct transcript from the official
20 electronic sound recording of the proceedings in the above-
21 entitled matter.

22

23 *Christine Fiore* (signature)

24 _____          May 15, 2014

25    Christine Fiore, CERT