```
 1                    UNITED STATES DISTRICT COURT
                     EASTERN DISTRICT OF NEW YORK
 2

 3   -----------------------------------X
                                       :
 4   JEFFREY McEARCHEN, et al.,         :  13-CV-3569 (FB)
                                       :
 5                     Plaintiffs,      :
                                       :
 6              v.                      :  June 25, 2014
                                       :  Brooklyn, New York
 7   URBAN OUTFITTERS, INC.,            :
                                       :
 8                     Defendants.      :
     -----------------------------------X
 9
          TRANSCRIPT OF CIVIL CAUSE FOR TELEPHONIC CONFERENCE
10              BEFORE THE HONORABLE JAMES ORENSTEIN
                  UNITED STATES MAGISTRATE JUDGE
11

12   APPEARANCES:

13

14   For the Plaintiffs:        SETH R. LESSER, ESQ.
                                Hepworth, Gershbaum & Roth, PLLC
15                              192 Lexington Avenue, Suite 802
                                New York, New York 10016

16

17   For the Defendant:         WILLIAM R. HORWITZ, ESQ.
                                Drinker Biddle & Reath LLP
18                              One Logan Square, Suite 2000
                                Philadelphia, Pennsylvania 19103

19

20

21   Court Transcriber:         SHARI RIEMER
                                TypeWrite Word Processing Service
22                              211 N. Milton Road
                                Saratoga Springs, New York  12866
23

24

25


     Proceedings recorded by electronic sound recording,
     transcript produced by transcription service
```

2

1  (Proceedings began at 9:34 a.m.)

2  [Mr. Lesser mumbling voice and whispering during colloquy]

3          MR. LESSER:  Good morning, Your Honor.  Seth Lesser

4  for the plaintiff.

5          THE COURT: Good morning.

6          MR. HORWITZ:  Good morning, Your Honor.  William

7  Horwitz from Drinkle, Bidder & Reath on behalf of [inaudible].

8          THE COURT: All right, folks.  So I wanted to discuss

9  the contents of the notice and I thought it would be easier

10  for us to do this sitting around the table and pencils out

11  because there are a number of points in dispute.

12          Just to give you my overall view of this, I want

13  this to be short and clear to let the potential opt ins make

14  an informed choice without needlessly -- without overloading

15  them with information that really gets to the merits.  I want

16  them to have an understanding of what the claim is that they

17  would be joining in if they want to join in that they're bound

18  in.  So that's my overall goal.  That said, I'll hear you on

19  each of these points but I want you to know how I'm viewing it

20  going in.

21          So the first issue that is whether we have this

22  introductory section with bullet points and, Mr. Horwitz, I

23  know your side says that it's redundant and Mr. Lesser, I know

24  you -- well, actually I don't know what you say about that

25  objection.  I don't think you addressed that.

3

1          MR. LESSER: The redundancy?

2          THE COURT: Yes.  Well, basically you don't need it.

3    Everything that you had said in the bullet points is already

4    there so what -- why should we large this out?

5          MR. LESSER: Right.  The reason I moved to including

6    bullet points, and it's the same reason sent settlement

7    notices, we now summaries before we get to the longer notice

8    is that consistent with your goal of trying to make it simple,

9    direct and clear we had found putting the -- if I may, my

10   colleague.

11         THE COURT: Who are you, ma'am?

12         MS. SUNSHINE:  Naomi Sunshine, Outten & Golden for

13   plaintiffs.

14         THE COURT: Good morning.

15         MS. SUNSHINE: My apologies for my delay.

16         THE COURT: No problem.  All right.  So we were

17   talking about the bullet points.

18         MR. LESSER: Right.  Simply to put up front first the

19   highlights, the bulleted highlights.  Now, there is

20   [inaudible] concession, maybe make it a little easier, I don't

21   believe we necessarily, plaintiffs necessarily agree that we

22   need the full what I call Paragraph 44 of the amended

23   complaint, the first bulletin.

24         THE COURT: I just think if this were a typical class

25   action notice, it goes on for pages and pages of tiny type I'd

4

1  be more sympathetic but it's a few pages.  It's not that long.

2  I'd like to do it that way.

3          MR. LESSER:  So that would be to delete on Page 1

4  the five or six bullets and go straight to why did I get this

5  notice?

6          THE COURT: Yes.

7          MR. LESSER: Okay.

8          THE COURT: I don't mean to take out you may have

9  rights under a collective action lawsuit, that heading there.

10  I guess that's the subheading to the title.  So you may have

11  rights under a collective action lawsuit then go straight to

12  point one.

13          MR. LESSER: Certainly.

14          THE COURT: Now, on the second one, the description

15  of the claim, the defendant's proposal tracks language of the

16  FLSA and Mr. Lesser, you specifically address that but you

17  just say basically unless it's inaccurate or misleading I

18  shouldn't alter your proposed notice.  That's not my

19  understanding.  I think my job is to make sure that we've got

20  something that accurately and efficiently conveys the

21  information so I think I have the discretion even if it's not

22  misleading in any way.

23          So that said I'm happy to hear you guys about what

24  we should say in describing the lawsuit to the extent you're

25  in disagreement about it.

1          MR. LESSER: On this point, and this is something we

2   particularly feel strongly about, there is case law as we

3   cited to, Your Honor, which says a long magilla as it were of

4   points from the defendant explaining its position in the case

5   isn't that not proper.  The reason that --

6          THE COURT: I'm not talking about that.  I'm just

7   saying that --

8          MR. LESSER: I'm sorry.

9          THE COURT: Where I disagree with you --

10         MR. LESSER: Am I misunderstanding you?

11         THE COURT: Where I disagree with you is that I think

12  you're saying basically I'm constrained to follow your

13  proposal unless it's misleading and I think I have the

14  discretion to have another non misleading way of doing it.  Do

15  you disagree about that?

16         MR. LESSER: I believe absolutely.  I believe that's

17  within your discretion.  There certainly have been judges who

18  view this as fundamentally -- the plaintiff's document, we

19  cited that.

20         THE COURT: I don't disagree that --

21         MR. LESSER: Right.

22         THE COURT:  -- the basic idea is to convey what the

23  plaintiff's claim is.

24         MR. LESSER: Correct.

25         THE COURT: And not to litigate in an adversarial way

6

1    the argument.

2            MR. LESSER: Correct.  So and the reason -- in fact

3    Your Honor has done so many of these cases in recent years and

4    the reason we have moved, plaintiff's moved from what we have

5    in the plaintiff's description of the allegations tracks in

6    the complaint is typically most notices -- in fact, you look

7    at some in the cases that were cited to you they just

8    basically say words along to the effect that plaintiff's claim

9    that they were entitled to overtime because they were

10   misclassified and were not paid overtime.

11           We have discovered in practice that doesn't provide

12   enough information to allow people to think that yes, I may

13   have a claim.  The problem the plaintiffs have with this --

14   I've never seen anything like this actually, this kind of

15   description in any notice in a FLSA case where the defendants

16   propose rather than saying [inaudible] obligations or believe

17   that their primary duty and in actuality and in fact was non

18   management is this is misleading because -- this is where I

19   pointed out -- we pointed out in the letter is that these

20   various points don't prove anything by themselves legally

21   because the regulations and the standards are much more

22   complex.

23           This is I believe intended, I believe it's fair to

24   say, to tell somebody if you were a sales associate, you

25   directed the work [inaudible] point something out of it

1   randomly and other employees [inaudible] have been

2   misclassified.  That's not even close to correct because --

3           THE COURT: You're talking about the defendant's

4   description.

5           MR. LESSER: Correct.  I'm turning to the defense's

6   description.

7           THE COURT: I'm sticking with the plaintiff's

8   description for now.

9           MR. LESSER: Oh.  So the plaintiff's description we

10  use and we have been using now for the past year or two we

11  find it -- the worst thing that happens or the most confusing

12  that happens in a collective action, particularly a

13  misclassification collective action of which I've done many of

14  these, is somebody shows up and says I didn't really fully

15  understand what your claim was in the case.

16          Now, I thought it was because of -- we had this -- I

17  thought it was because I wasn't given as much lunch time or I

18  was being misclocked at lunch time.  So what we have gone to

19  in the most -- in the last year -- when I say we, my firm and

20  a few others that I'm aware of has basically gone to the

21  complaint and said here are the allegations.  That's in --

22  this is basically Paragraph 44 of the complaint in this case.

23  It summarizes and says here's what the claim is about.

24  Remember, as Your Honor may be well aware having been on the

25  bench and seeing all these cases, only a very small percentage

8

1   of people will opt in to this action.

2            In a retail chain store misclassification case my

3   firm's experience, my experience has been we get approximately

4   15 percent opt ins and if in fact those 15 percent of people

5   don't do managerial work because they're spending most of

6   their time putting the stuff on the shelves, cleaning the

7   floor, you know, handling the deliveries they have a claim.

8   But if we don't provide people with information we do get

9   these individuals in the case who don't understand what it is

10  and they're fully informed and I don't believe there's

11  anything misleading about this.  This is literally our

12  allegation.

13           THE COURT: All right.  I'm trying to find a way to

14  simplify it.  Mr. Horwitz, what do you say?

15           MR. HORWITZ: Your Honor, we agree that the notice

16  should be short, simple, straightforward.  The purpose of it

17  is to inform the punitive class action members of the lawsuit

18  and their opportunity to [inaudible].

19           To the extent that Mr. Lesser is citing numbers in

20  terms of what the participation rate is and he is looking for

21  ways to boost the participation rate the fact is the

22  participation rate -- you know, it is what it is and the cases

23  don't go into these long detailed descriptions of what you do

24  on a daily basis, what your duties were, what your duties

25  weren't, and it goes -- what the plaintiffs are proposing goes

1  well beyond just -- let's just go black and white what the

2  claim is and we'll do it for the plaintiff, we'll do it for

3  the defense.

4          There are obviously a significant number of people

5  who do opt in.  So to say that it doesn't make any sense or

6  that people can't understand it that's obviously not the case

7  and just if we're going to go into this advocacy -- and that's

8  really what it is.  It's advocacy.  It doesn't make sense to

9  make it one sided.  The first line or the second line

10  approximately of what the plaintiffs propose says this is not

11  a solicitation from a lawyer which we agree to that language

12  but let's not make it a solicitation from a lawyer.  It

13  shouldn't be --

14          THE COURT: Right.  Okay.  So --

15          MR. LESSER: If I may, Your Honor.

16          THE COURT: No, please.

17          MR. LESSER: I'm sorry.

18          THE COURT: Guys, I'm looking for ways to simplify

19  language that I thought you were essentially in agreement.

20  I'm trying to just simplify it because I'm looking at the

21  plaintiff's proposal for why did I get this notice, what the

22  lawsuit is about and then there's this sort of long paragraph

23  in the lawsuit.  Comparing it to Point 2 in the defense

24  version what are the allegations in this lawsuit and it's a

25  long blocked paragraph and they're very similar.  I'm just

1 trying to -- something I thought was fairly non controversial

2 which is finding a way to just simplify that a little bit.

3         MR. LESSER: Right. I just want to be clear.  If

4 anything I'm not trying to boost participation with this

5 description.

6         THE COURT: Guys, I really want you to stay away from

7 motivations on either side.  I'm not worried about it and I

8 want to get through the wordsmith.  It's a long and boring

9 task.  It's going to be made a little simpler if we don't

10 worry about sort of the bigger picture, things of each side

11 here.

12         MR. HORWITZ:  Your Honor, with that said if I could

13 clarify one point because then I can better understand what

14 you're saying.  We didn't have a lot of changes to the

15 plaintiff's description.  There are very little changes.  I

16 was just going with what you had said earlier.  If you prefer

17 to just go black and white we'll go black and white.

18         THE COURT: No, I don't want to go just black and

19 white.  I want to -- with this description I want as I think

20 you guys understandably did, is to give the people who

21 received this notice a way of saying am I part of the group

22 that would assert this claim.  So I think the bulk of this

23 paragraph which has the list of tasks which is in both of your

24 proposals makes sense.

25         I'd like to clean up the beginning part of it so

1    it's just -- they don't need to know who the plaintiffs are or

2    the name of the lawsuit.  Just say the plaintiffs contend or

3    claim and skip right to they were not paid overtime.

4                MR. LESSER: Right.

5                THE COURT: Then specifically -- and then the rest of

6    it I think that paragraph is fine.  That's just as to the

7    description of the claim.  Then I think we have a bigger fight

8    and what I understood would be a bigger fight about the

9    description of the defenses and I'm happy to hear you on that.

10   But I do think that the purpose of the notice is to let the

11   plaintiff, potential plaintiffs know what the claim is.  The

12   fact that it's a dispute is clearly something that should be

13   provided but I don't think we need more detail about why the

14   defendants think that they comply with the law.

15               But given that I just want to let you know where I'm

16   starting from but I'm happy to hear you both.  So given what I

17   said I suppose I should start with you, Mr. Horwitz.

18               MR. HORWITZ: Thank you, Your Honor.  Your Honor, we

19   don't think that the list of duties that people performed or

20   didn't perform every day is should be included on either side

21   but to the extent that we're including it for the plaintiffs

22   we thought it made sense to include it for the defense.

23   That's really our motivation is to make it fair.

24               THE COURT: Right.  But I wouldn't want a description

25   from the plaintiff's of here's why we think we're right.  I

1  wouldn't want evidence for example, but I think you can't

2  intelligibly understand this.  You can't make this notice

3  intelligible without saying here's what the claim is.  So the

4  balance to me seems to be here's what the claim is and

5  defense, we say it's not true.  We say this is true, we say

6  it's not true.  But beyond that I'm not sure I see the need

7  for it.

8         MR. HORWITZ:  Our only other point on that is we

9  agree that department managers performed these duties.  Any

10  department manager is going to look at this is going to say

11  oh, yeah, well this describes me.  But if they don't have the

12  other side of it they're going to think oh, I've got a claim

13  but they're not going to understand that the issue isn't well,

14  didn't you on occasion fold clothes.

15         THE COURT: How about -- that's a fair point.  How

16  about in the plaintiff's notice where it says Urban Outfitters

17  denies that it has violated the law and claims the department

18  managers are properly classified as exempt and it goes on.

19  How about and claims the department managers who performed the

20  tasks described above are properly classified as exempt.

21         MR. HORWITZ:  Right.  Although the important words

22  in what plaintiffs proposed in the prior paragraph is that

23  their specific primary duties did not differ substantially

24  from those performed by non exempt employees and they spend

25  most of their time doing hourly tasks such as which is why the

13

1   idea is not to have anybody look at it and say that covers me.

2   To say are you in that group where your primary duties --

3           THE COURT: Right.  But Urban Outfitters -- in a

4   misclassification case like this I think it's fair to say that

5   the position in the lawsuit is not that they don't do these

6   tasks so much as doing these tasks doesn't qualify them for

7   coverage and I think it's fair to put the opt ins on notice of

8   that.  So in claims that department managers are properly

9   classified as exempt even though they spend most of their time

10  doing the tasks described above.  How about that?

11          MR. HORWITZ:  That's certainly better, Your Honor,

12  and perhaps we could add in -- and this is from the proposed

13  language -- Urban Outfitters' position just a little bit of

14  it.  For instance, it is Urban Outfitters' position that

15  although the individual experiences of department managers

16  vary in many respects all department managers spend a majority

17  of their time overseeing their departments and working closely

18  with the managers, with the store managers who manage the

19  store.

20          THE COURT: No, I'm not going to do that.  I would

21  insert into the claims proposed language after exempt even

22  though they spend most of their time performing the tasks

23  described above.

24          MR. LESSER:  I'm sorry.

25          THE COURT: After the word exempt even though they

14

1    spend most of their time performing the tasks described above.

2              MR. HORWITZ:  Well, we wouldn't say most of their

3    time.  If they spend most of their time doing those tasks then

4    they would be arguably non exempt.  In other words, we're

5    saying they spend some time folding clothes but the majority

6    of their time was spent doing managerial work.

7              MR. LESSER: How about this?  How about this, Bill?

8              THE COURT: Even though -- okay.  Then I think I can

9    make it simpler.  Even though they spend time performing the

10   tasks described above leaving it for you guys to litigate how

11   much and what the effect is.  All right?  So after exempt even

12   though they spent time performing the tasks described above.

13             MR. LESSER: Did you say some of their time?

14             THE COURT: I don't want to get into the

15   quantification because that's where the dispute lies.

16             MR. LESSER: Fair enough.

17             THE COURT: Okay.  Next issue that I think is in

18   dispute.  If I miss something let me know.  I'm more than

19   likely to do that and I want you guys to catch me if I do.

20             The next issue I have is including defense counsel's

21   contact information.  Mr. Horwitz, let me ask you.  An opt in

22   plaintiff calls you up and says I got this notice, what's the

23   conversation you want to have and think you can permissibly

24   have?

25             MR. HORWITZ: Well, this is of course somebody who

1    has not opted in.

2            THE COURT: Yes.  Look, if it's somebody who's opted

3    in clearly you're covered by Rule 4.2 and you can't talk to

4    them at all.  Right?

5            MR. HORWITZ: Right.  Correct.

6            THE COURT: So it's somebody and you don't know when

7    the person calls up necessarily if that's [inaudible].  Let's

8    say you can be confident that the person on the other end of

9    the phone is a potential opt in who has not yet made the

10   decision, has received this notice, what conversation can you

11   properly have with that person?

12           MR. HORWITZ: But what do they ask?

13           THE COURT: I don't -- I don't know.  That's what I

14   want to know.  What's the conversation you contemplate that

15   would make it useful to put your information in here?

16           MR. HORWITZ: Well, I imagine it would very similar

17   to the conversation that plaintiff's attorney would have. I

18   mean, first of all, we would say have you submitted the

19   contempt form.  If they have, we stop talking to them.  Argue

20   otherwise have a lawyer.  Then if they ask what's the claim

21   about we would explain exactly what the claim is which I

22   assume is exactly what Mr. Lesser would do in the

23   circumstance.

24           THE COURT: The plaintiffs described --

25           MR. HORWITZ: And if he would say well, is this going

1  to affect my job.  We would say absolutely not.  The company

2  has a strict policy against retaliation.

3  　　　　　THE COURT: Right.  Now right there aren't you giving

4  some legal advice?

5  　　　　　MR. HORWITZ: That's not legal advice and it's

6  exactly -- no, that's not legal advice.  That's the company's

7  policy.

8  　　　　　THE COURT: Okay.  So you're advising them of company

9  policy.  This will not affect my job.  Later this plaintiff

10  says -- gets fired for stealing and has a retaliation claim.

11  You're a witness, right?  I had a conversation with Mr.

12  Horwitz and he said I wouldn't be fired and now I'm fired.  He

13  promised me I would keep my job if I filed this lawsuit.  I

14  have a retaliation claim against him and I want to depose Mr.

15  Horwitz.  I will tell you right now at that point I order you

16  deposed and you're out of the case and your firm is out of the

17  case.

18  　　　　　MR. HORWITZ: Well, obviously we don't want that.

19  　　　　　THE COURT: Right.  And look, I don't want to belabor

20  it but it's really hard for me to see any useful communication

21  that comes out of this that isn't either putting you in a

22  position of a potential witness or putting you in the position

23  of rendering legal advice [inaudible] doing.  I don't see the

24  upside that outweighs it if -- and that's why I wanted to hear

25  from you if there's something I'm missing about the potential

1  upside.

2          MR. HORWITZ: Well, I think it would be up to the --

3  that's just it.  I think it would be up to the individual.

4  Maybe the individual doesn't want to call up the plaintiff's

5  attorney and find out what the plaintiff's position is.  Maybe

6  they want to see -- well, I don't understand.  Maybe they want

7  to know what the company's position is.  I don't see how us

8  telling them what the company's -- what the company's position

9  is in this case.  I don't see how us telling them what the

10 company's position is is giving them legal advice.

11         THE COURT: I'll tell you what.  Can we have an

12 agreement that if somebody calls you up as a potential opt in

13 and says what's the company's position you'll send them a copy

14 of the answer?

15         MR. LESSER:  Absolutely. And the complaint so they

16 can compare the two.  Otherwise they won't understand it.

17         THE COURT: Or the paragraph that the defendants

18 drafted about what is Outfitters position in this lawsuit.

19         MR. LESSER: Sure.  That actually says something.

20         THE COURT: I don't want to deprive you of something

21 that fairly happened but I want to do it -- I want to

22 accommodate it in a way that doesn't have what I think are

23 very significant pitfalls and things I would think you'd want

24 to avoid which is a claim that you violated your ethical

25 obligations.  I don't -- let me stress this.  I don't for a

1  moment think you would do something like that.  I'm not

2  worried about that.  But the claim would arise from somebody

3  from a lay person who gets the wrong impression of a

4  conversation that he does something that can be characterized

5  as unethical because he's giving legal advice or that makes

6  you a fact witness.  I don't want to have to deal with it.  So

7  I'm going to keep defendant's contact information out.

8          That makes me go to the issue about which attorneys

9  to contact for questions, same issue.

10          Next one I have is the section that says opt ins can

11  retain their own attorneys and language about payment.  I want

12  them to know that in a very simple way they have an option.

13  They can be represented by the named plaintiff's counsel.

14  They can retain their own counsel or they can represent

15  themselves for all opt ins and I think that should include

16  that if they retain their own counsel that counsel's

17  compensation is a matter for them to work out with the

18  verdict.

19          MR. LESSER: Sure.  How about -- can I offer a

20  suggestion?

21          THE COURT: Sure.

22          MR. LESSER: We could add a sentence that effect to

23  what's now sub 2, what are my choices or go in sub 3 I

24  suppose.

25                    [Pause in proceedings.]

1          THE COURT: I think what are my choices is the better

2    place because it's really that's one of the choices.  If you

3    wish to [inaudible] the lawsuit you must sign and complete the

4    enclosed consent form.  If you -- and if you -- you must also

5    choose whether to represent yourself or -- you must also

6    choose whether to be represented by the plaintiff's counsel --

7    I'm not worried about the specific words here.  But you must

8    also choose whether to be represented by plaintiff's counsel,

9    find your own lawyer and/or represent yourself, find your own

10   lawyer you have to work out the compensation with that lawyer.

11          MR. LESSER: How about this?  I'll work out with Bill

12   and I assume we will not have a problem after the sentence

13   says join this action does not mean that you're entitled to

14   any unpaid wages [inaudible] case we'll try to obtain recovery

15   for you.  We could add just a simple sentence that says that

16   you can also retain at your own expense your own attorney to

17   represent you in this action.

18          THE COURT: Yes.  My concern about at your own

19   expense is that they may find a lawyer --

20          MR. LESSER: On a contingency.

21          THE COURT:  -- on a contingency so I don't want to

22   someone on the scale and that's why I'm a little concerned

23   with the language if you join the language -- the lawyers

24   listed below will represent you.  So I'd rather put language

25   in the choices section, you can choose to be represented by

1   the plaintiff's counsel.  Do you want to put the thing about

2   how you work on contingency there?  Fine.

3               Or you can choose to engage your own counsel and

4   work out the compensation with that lawyer or you can

5   represent yourself.  I feel I have to put in that last part

6   although I think we're all better off if everybody is

7   represented.

8               MR. LESSER: I've never had a philosophical problem

9   with this kind of sentence.  I can absolutely represent to you

10  I've done 30, 40 of these cases.  Only once has anybody ever

11  shown up with their own lawyer.  The lawyer took one look at

12  it, called me and said you go represent.

13              THE COURT: Yes, I can't imagine but I --

14              MR. LESSER: I've never understood even why

15  defendants wanted [inaudible] frankly.

16              THE COURT: So, Mr. Horwitz, I'm happy to hear you

17  but do you guys think you can work out the specific language

18  of implementing that?

19              MR. HORWITZ: Sure.

20              THE COURT: Okay.  All right.  Next.  How do I stay

21  out of this lawsuit section of the -- defendants want -- did

22  you want that separate from what if I don't join?

23              MR. HORWITZ: Your Honor, I think it should be I

24  think a standalone heading.  For somebody who is not going to

25  sit there and spend [inaudible] skim down and say oh, here,

1   here's an opportunity for me to stay out, what do I do.

2            THE COURT: Okay.  See, I think it's covered by what

3   are my choices.  It's the same thing as choosing a lawyer,

4   right?  So I would -- in the plaintiff's version if you do not

5   wish to join this lawsuit you should take no -- you should

6   simply take no action frankly.  I would make it even simpler.

7   If you don't wish to join this lawsuit you don't have to do

8   anything at all and you won't be bound by the results of the

9   case.

10           MR. HORWITZ:  Your Honor, if possible, I would just

11  -- if there's any way to give it its own heading or something.

12           THE COURT: There is a way we can do it but I'm

13  trying to make this simple and this is the -- the area where

14  we're addressing what are my choices.  So why did I get this,

15  what's it about.  Two, what are my choices.  Well, the choices

16  are join or don't join.  If you join lawyers -- these lawyers,

17  those lawyers or somebody else.

18           MR. HORWITZ:  Perhaps under what are my choices we

19  could have a little bullet points or a little bold or

20  something so it's -- just so it catches the eye as to the --

21           THE COURT: Okay.  If you wish to join the lawsuit,

22  if you don't wish to join the lawsuit those are the two bullet

23  points.

24           MR. LESSER: If it's highlighted maybe then we should

25  do what two of the three cases that Bill had cited to Your

1   Honor did.  The cases from Judge Pollak and I think it's a

2   case from Judge Crotty that says if you don't join the lawsuit

3   basically you're statute of limitations could [inaudible] run

4   and the like.  In both two of three cases that are cited

5   that's the additional language where this was highlighted.  I

6   [inaudible] to try to keep it simple and to avoid going there.

7   For example --

8               THE COURT: If people want to join they're going to

9   join.  I don't want to be advocating one way or the other the

10  statute of limitations.  I understand it's giving them

11  information they don't have but I think once we go down that

12  road in fairness there's probably more information we should

13  give them and I would just assume keep it simple.

14              MR. LESSER: Okay.  So what we'll try -- we'll work

15  out is sort of a subheading, if you wish to join -- if you do

16  not wish to join you do not need -- I'll try to use your

17  language.  You do not [inaudible] anything you will not be

18  bound by the results of the case.

19              THE COURT: Right.

20              MR. LESSER: Got it.

21              THE COURT: I mean look, frankly the defendant's

22  version have language -- take out the language of the defense

23  version, the first sentence, you're under no obligation to

24  join this lawsuit against Urban Outfitters but the second and

25  third sentences seem to capture it fairly clearly.  I'm not

1  saying you have to do it that way but it seems like a fairly

2  simply starting point.

3         MR. HORWITZ: Okay.

4         THE COURT: The heading whether it's court authorized

5  or court ordered remind me, I just have so many of these

6  cases, Mr. Horwitz, that I lose track.  You guys are not

7  consenting to the order going out; correct -- to the notice

8  going out?

9         MR. HORWITZ: Correct.

10        THE COURT: So the only way it goes out is if I order

11  it?

12        MR. HORWITZ: Well, Your Honor, I mean we're here --

13        THE COURT: Look, I don't want to mislead people.

14        MR. HORWITZ: This is -- I think this is probably

15  this argument why people don't like lawyers but I understand

16  this is not going to make a difference in this case

17  significantly.

18        THE COURT: Yes, it won't.

19        MR. HORWITZ: But the fact is I mean if -- we

20  wouldn't be at this point if the plaintiffs weren't asking to

21  send out a notice in the first place.  So they have to get

22  authorization from the court.  They couldn't just send it out.

23        THE COURT: They do have to get -- right.  If all

24  that -- what happened was plaintiff said we'd like to send

25  this out and you said okay they'd still need authorization.

1   So we'd say court authorized notice.  Plaintiffs want to do

2   it.  You say it shouldn't happen.  I'm ordering it to happen.

3   So what this is, is a court ordered but if for whatever

4   comfort it gives you I completely agree, it won't have the

5   slightest bit of difference on what happened to the lawsuit.

6            On the statement of [inaudible], I generally prefer

7   keeping it as simple as possible.  Rather than competing

8   versions of how to say it in a separate section I would just

9   do away with both versions and keep what's in the closing text

10  which is fairly standard.  I've authorized the notices and its

11  content and the court is taking no position in this case.

12           MR. HORWITZ: I'm sorry.  Where are you reading from?

13           THE COURT: You know what, that's not from either

14  version.  That's -- I just realized now.  I'm going through my

15  notes and I didn't clearly label.  This is just what's

16  standard -- the standard language at the bottom in cases, case

17  after case in this district.  I can provide you the text but

18  I'll read it out to you now.

19           "This notice and its contents have been authorized

20  by the United States District Court, Eastern District of New

21  York."  It has my name.  It's usual to have my name.  I don't

22  care if it has my name in it.  I just assume not have it

23  because it makes it simpler here.  So "This notice and its

24  contents have been authorized by the United States District

25  Court, Eastern District of New York.  The court has taken no

25

1  position in this case regarding the merits of the plaintiff's

2  claims or of the defendant's defenses."

3        MR. HORWITZ:  Your Honor, I think that's -- it's

4  typically bold.

5        THE COURT: Yes, bold and capsuled.

6        MR. LESSER: So I'm sorry.  Just one more time, the

7  last sentence, the court.

8        THE COURT: Yes, I'll give you --

9        MR. LESSER: Okay, fine.

10        THE COURT: I'll give it to you but the court has

11  taken no position in this case regarding the merits of the

12  plaintiff's claims or of the defendant's defenses.

13        I think I've covered the things that you had in

14  dispute.  I have a couple of other things that I want to

15  address that I noticed but is there anything else that you

16  guys had that was in dispute?

17        MR. LESSER:  We had a section, plaintiff's had a

18  section in our letter addressing e-signatures and websites.

19        THE COURT: Yes.  I didn't -- that was my next issue

20  but I wasn't sure it was in dispute.

21        MR. LESSER: I'm not sure if it's in dispute or not.

22        MR. HORWITZ:  I think the only detail may be the

23  website and it may not even be in dispute.  So essentially

24  we're okay with them being able to submit consent forms in the

25  ways that plaintiffs propose.  To the extent that there's

1  going to be a website set up and whatever information -- we

2  need to have some idea of what the website is going to say.

3  To the extent that we have a notice here that's court

4  approved --

5           THE COURT: I think we're on the same page about

6  using a website and technological events as to more officially

7  to gather the information.  I leave it to you guys to work out

8  how to do it and how to make sure that you're getting

9  authenticate information from the actual opt in plaintiff.  I

10  didn't see that there was a dispute there but that's why I

11  wanted to check.

12           MR. LESSER: Yes, sure.  You're both absolutely

13  right.  I've forgotten.  We'll send you what we used for

14  example in the PetSmart case.

15           THE COURT: Okay.

16           MR. HORWITZ: And then another sort of related thing

17  which I think we can probably work out.  We had agreed that

18  there was going to be a reminder notice sent out.  We never

19  agreed on the content of the reminder notice but I'm assuming

20  we can work that out.

21           THE COURT: Okay.  Now, the -- one issue is -- I

22  wasn't sure about -- I think you actually -- is where we

23  should talk about the possibility of participating in

24  discovery.  I think you have it in different places.

25           MR. HORWITZ: I think we agreed on that.  Just the

1  location was the issue.

2          THE COURT: Yes, exactly.  And I'm trying to remember

3  I know it's standard about this.  I don't recall who had which

4  idea but my preference is to put it in the what happens if I

5  join because again I think sort of logically that's where it

6  goes.  After you made your choice now that you decided to join

7  here's one of the things that could happen.

8          MR. HORWITZ: That's in our version there, sub 3.

9          THE COURT: This is an issue and I see this a lot in

10 smaller cases that are more local in nature but I think it's

11 worthwhile putting this in and I'm -- the suggestion but I'm

12 happy to hear from you if you have a different view.  But

13 something and my preference is as simple as possible along the

14 lines if you have the right to join the lawsuit regardless of

15 the immigration status.  Again, I don't think it's

16 particularly germane to this case but --

17         MR. LESSER: Okay.  I'm sure it comes up.  A

18 restaurant case --

19         THE COURT: Yes, locally I see a lot of cases,

20 restaurant cases where there are discovery requests for

21 documents that reveal immigration status and that's typically

22 been off limits.  Mr. Horwitz, any objection to that?

23         MR. HORWITZ: I don't know.  I mean my objection

24 would be it's just adding more -- making it longer and so

25 forth but it's not a strong objection.  That's fine.

1        THE COURT: I leave it to you to decide where to put

2   that in.  I think perhaps either how do I join or will my

3   participation affect my employment.  Either one of those is

4   fine.  I leave it to you guys but -- and just a very simple

5   statement, federal law permits you to join in the lawsuit and

6   share in any recovery regardless of your immigration status is

7   one that I've approved before.  However you want to wordsmith

8   it is fine with me.  If you have a dispute you let me know.

9        I've seen versions of it that explicitly say you

10  won't be asked to disclose your immigration status.  I don't

11  think it's necessary in a case like this where it doesn't seem

12  to come up but, again, you guys work it out.  Let me know if

13  there's a problem.

14        On the consent form --

15        MR. LESSER: I think the only issue there was whether

16  a sentence -- I think Urban wishes to have a sentence that I

17  forego my right to have my own attorney or some such which

18  I've never seen in a consent form.  That seems overkill.

19        THE COURT: Yes, maybe you can do it as a check box.

20  Maybe you can have a check box.  Named counsel, I'll find my

21  own attorney or someone else.  However you want to do it.

22        MR. LESSER: I've seen it that way.  Normally it

23  seems [inaudible].

24        THE COURT: I don't feel strongly about it.  As long

25  as it tracks what's -- the information in the notice.

1          MR. LESSER: Okay.

2          THE COURT: Right.  So the choices on the form are

3   the same as the choices outlined in the notice.

4          MR. HORWITZ:  How about let's just -- try to make it

5   simpler, a check box can look more complicated, something else

6   to check.  I hereby -- the present last sentence and --

7   plaintiff's copy.  I hereby designate plaintiff's counsel

8   representing [inaudible] decision by [inaudible] litigation

9   settlement or I wish to be represented by my own counsel

10  identified below.

11         THE COURT: My only concern, I don't feel strongly

12  about this, is if you have it in a blocked paragraph like that

13  and there's an either/or it could be confusing.  If you had a

14  check box at least there are going to be some that don't have

15  it --

16         MR. LESSER: The problem then becomes [inaudible]

17  check box.  They don't check any of the boxes.

18         THE COURT: Right.

19         MR. LESSER: We get it back.  We assume and everybody

20  generally assumes they mean us, plaintiff's counsel

21  identified, but it hasn't been checked.  So somebody -- it

22  could be completely -- you got to call them back, you got to

23  get on the phone and --

24         MR. HORWITZ: Your Honor, the way that I understood

25  you saying it was there will be a check box that says I'll

1 find my own attorney.  So if they don't check it then they're

2 not going to find their own attorney.

3          THE COURT: What I was thinking and frankly

4 [inaudible] is to have three check boxes.  You have to choose

5 one but if none are chosen then you have to write back.  On

6 second thought I think you're better off with the paragraph as

7 you described it but I think it should also have "or I will

8 find my own attorney or represent myself."

9          MR. LESSER: Okay.

10          THE COURT: As noted below.  Because that way if all

11 you get is a signature you're the counsel.

12          MR. LESSER: Right.

13          MR. HORWITZ: Your Honor, on that form we would

14 really prefer the language that we suggested where it says I

15 hereby authorized the following prosecution of the claims in

16 my name and on behalf of this collective action and against

17 defendant Urban Outfitters to contest.  As the plaintiffs

18 [inaudible] to [inaudible] overtime wages.  I mean our

19 position is it should be to contest what I believe to be the

20 failure --

21          MR. LESSER: There's no issue that they weren't paid

22 overtime.

23          THE COURT: Well, no, but as required under federal

24 law.  But the point is it's an allegation by the person

25 signing it and so of course it's what he believes.  I don't

31

1    think -- look, if it's to preserve a position I don't tink you

2    need to do anything.  If it's to better inform I think the

3    information comes in the notice.

4           MR. HORWITZ: Well, I think that -- then my concern

5    would be they look at the notice, they look at this and they

6    see oh, it's accepting the fact that I -- that the defendant

7    failed to pay me as required by federal law.

8           MR. LESSER: Let me take out the phrase as required

9    by federal law.  I don't think we need it and that addresses

10   your concern.

11          THE COURT: How about taking out everything after

12   Urban Outfitters, Inc. until -- that whole clause.  So strike

13   out everything from to consent until federal law.

14          MR. LESSER: Perfect.

15          MR. HORWITZ: Thank you, Your Honor.

16          THE COURT: It makes it shorter.  Okay.

17          Anything else about that part of the form?

18          MR. LESSER: No.

19          MR. HORWITZ: Your Honor, we have a suggestion and I

20   suppose it's not necessary but at the top pursuant to Fair

21   Labor Standards Act.  We just added that which wasn't in the

22   proposed form but --

23          THE COURT: I don't have a strong view on it.

24          MR. HORWITZ: I don't know if plaintiffs had a view

25   on it.

1          THE COURT: But my approach to it is the less

2    language the better.

3          MR. HORWITZ: That's fair, Your Honor.

4          THE COURT: Okay.  Good.  All right.  I think that

5    covers everything I had on my list.  Anything else you guys

6    wanted to raise on the notice or the form?

7          MR. HORWITZ: I think we covered it.

8          THE COURT: Last thing.  When I put something on the

9    docket I can either have a very simple as set forth on the

10   record or I can have something very detailed.  I'd rather do

11   the former and unless you feel that there's anything not clear

12   enough that you need some guidance from me in the docket.

13         MR. LESSER: I suspect we can order the transcript if

14   we really can't come --

15         THE COURT: Okay.

16         MR. LESSER: And we'll do it expedited but frankly

17   we'd rather make your life easier.

18         THE COURT: I appreciate that.

19         MR. LESSER: I assume I speak for you, Bill.

20         MR. HORWITZ: We'll work it out.  I don't expect t at

21   we're going to have to bother Your Honor.

22         THE COURT: Okay.  I'll just -- I'll ask my law clerk

23   to send to you the text that I said I would provide about that

24   standard block at the bottom.  I'll just email that out to the

25   two of you.

33

1          Thank you, folks.

2          MR. LESSER: Thank you for your time.

3          THE COURT: This is one of the things you just have

4    to sit down and do it sometimes.  I appreciate you taking the

5    time.

6          MR. HORWITZ:  This is why I didn't become a

7    corporate lawyer myself.

8          THE COURT: Have a good day.

9    (Proceedings concluded at 10:18 a.m.)

10                          *  *  *  *  *

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

34

1        I certify that the foregoing is a court transcript from

2   an electronic sound recording of the proceedings in the above-

3   entitled matter.

4

5   _____

6                    Shari Riemer

7   Dated:   July 3, 2014